MARY BUSHKO, ADMINISTRATRIX OF THE ESTATE OF ANTHONY TULA, DECEASED, AND MARY BUSHKO, ADMINISTRATRIX OF THE ESTATE OF ANNIE TULA, DECEASED, RESPONDENT, v. FIRST UHRO SLAVONIAN GREEK CATHOLIC SICK AND DEATH BENEFIT SOCIETY OF ST. MICHAEL THE ARCHANGEL, APPELLANT.

Submitted October 26, 1929—Decided February 3, 1930.

For the appellant, *Henry H. Rust* and *Andrew Foulds, Jr.*

For the respondent, *Feder & Rinzler.*

The opinion of the court was delivered by

BODINE, J.    A verdict was recovered in the Bergen Circuit in favor of the plaintiff, who sued as administratrix of Annie Tula's estate, as administratrix of Anthony Tula's estate and as guardian of their minor children.    The suit grows out of a contract made by Anthony Tula with the defendant society.    The contract is evidenced by Tula's application for membership and the constitution and by-laws of the society.    Only a part of the by-laws are printed.

The defendant society has for its object the payment of sick and death benefits to members.    It was organized May 2d, 1890, and Tula became a member in December, 1913, and regularly paid dues until March of 1925.

Annie Tula was paralyzed for about ten years before her death, October 13th, 1927. Anthony Tula fell ill in February of 1925. His feet were swollen and covered with large boils and he had a bad heart. He died February 22d, 1927, from heart disease. There was testimony that during the entire period of his illness he was unable to work and was under a physician's care.

The by-laws provide that sick benefits are not payable if the member is not prevented from following his usual occupation, and further that a physician must visit the member at least twice a week. The society has a sick committee whose duty it is to visit the sick and afflicted and report to the society.

The plaintiff, Mrs. Bushko, testified that from February, 1925, until Anthony was taken to the hospital, August 19th, 1925, he remained at her home and was so sick that he was unable to work and was visited by physicians every day. She reported the condition of Anthony Tula and his wife to the society, both by word of mouth and by letter. However, the sick committee did not visit them.

It is urged that there was no proof of medical attendance. On the° proofs it was open to the jury to find compliance with the by-laws from the testimony adduced. That the doctors who attended Tula were not called does not strip Mrs. Bushko's testimony of probative force. The by-laws do require immediate notice of illness, but they do not direct the form of such notice. The jury could find that there had been notice within the meaning of the by-laws.

Of course, during Tula's illness he did not keep up the payment of dues, and appellant claims that since these payments were not kept up he was not entitled to sick benefits and the right to recover death benefits also fell. The learned trial judge charged as follows:

"Where an association is indebted to a member for benefits to which he has become entitled, his dues and assessments may be set off against the same, so that their non-payment will not warrant his suspension.

"So you see, if you conclude that the decedent was en-

titled to the sick benefits, and he did not receive them, for the first thirteen weeks, he was entitled to $5 a week, and the balance of the time for which he was entitled to receive sick benefit, amount to $130. And I think the evidence in the case is that the amount due, upon which there was a suspension, is something over $12. If you conclude that the plaintiff was entitled to sick benefits, then I charge you, as a matter of law, that there was no justification for a suspension for the non-payment of dues under the death benefit certificate, but they should have offset those charges by deducting them from the sick benefit fund. But if you conclude that he was not entitled to sick benefits by reason of his failure to meet all conditions imposed upon him, by reason of his membership, then, of course, you are not to consider the sick benefits with relation to offsetting the claim for the dues under the death certificate."

This was a very clear statement of the law applicable to the situation involved, and it is apparent that the finding of the jury in favor of the plaintiff rests upon the proposition that the sick benefits were payable and that either there was no expulsion or that such course was not justified under the by-laws.

The charge, in so far as it states that affirmative action in the expulsion of a member must be taken by the society, is an admirable exposition of the contract. The application for membership contains the following statement:

"I enter this society and desire to become an earnest member of the said society and will obey the by-laws and amendments of the society * * * I promise to pay the dues of the society every month regularly and I will always give the secretary my correct address. In case of any disaster happens to me I will not claim my benefit if I be three months in arrears. If I be notified by registered letter sent by the secretary of the society and if I do not then settle my accounts I shall be expelled from the society. If I settle my accounts after being notified by the secretary of the society I shall pay the fine of twenty-five cents for the trouble caused to the society by me." Certainly, it is only a fair conclusion from

these words that some notification by registered letter was to be sent before expulsion became complete, and the court so construed the contract.

There was no error in the amendment of the complaint in so far as Mrs. Bushko as guardian of the minor children was substituted for Mrs. Bushko as administratrix of Annie Tula. There was no substantial change of parties or issues. The amendment, if necessary, was well within the sound discretion of the trial judge.

It is finally urged that the judgments should have been for smaller benefits. Throughout the case the benefits recovered are those discussed by court and counsel as the amounts the plaintiff was entitled to, if she were entitled to recover. In the court's charge, the amounts are again adverted to and no exception was taken and no attempt was made to direct the court's attention to the right of the matter. Under the partial by-laws printed it seems possible that there was error. We are not furnished, however, with the means to consider the question, there being no exception nor proof that there was error. Cases must be reviewed on the theory on which they are tried. *Schulz* v. *New York S. & R. Co.,* 87 *N. J. L.* 659.

Of the other errors assigned we need make no mention. The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.